**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY | | PLAINTIFF |
| v. | Case No. 4:09CV00422 JLH | |
| LANDMARK CLOSING COMPANY; MARCI INGRAM; and FIRST COMMUNITY BANK OF BATESVILLE | | DEFENDANTS |

**OPINION AND ORDER**

Pending before the Court is First Community Bank's motion for summary judgment. For the following reasons, First Community Bank's motion for summary judgment is granted in part and denied in part.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original).

A genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.

## II.

Old Republic is a Minnesota corporation authorized to issue title insurance in Arkansas. Marci Ingram is the president and principle shareholder of Landmark, an Arkansas title company. Old Republic and Landmark entered into an agreement that provided that Landmark would act as Old Republic's policy issuing agent in White County, Arkansas. Landmark's responsibilities included "signing, countersigning and issuing title insurance policies, endorsements, and other agreements regarding the condition of title . . . concerning real estate located in" White County, Arkansas.

Pursuant to its contractual obligations with Old Republic, Landmark opened escrow and trust accounts in its name at various banks. Among those accounts was an escrow account at First Community Bank of Batesville. In June 2009, Old Republic conducted an audit of Landmark pursuant to their contract. Old Republic discovered that Landmark had been misusing funds in Landmark's financial account with First Community Bank. According to the complaint, Landmark made improper and unauthorized disbursements and failed to make other disbursements, and as a result, $426,893.41 was not transmitted to the appropriate lienors. Unauthorized transfers occurred in 2007, 2008, and 2009. In the months leading up to this action, First Community Bank returned multiple checks to Landmark for insufficient funds. First Community Bank then allowed Landmark to resubmit the checks after Landmark had deposited sufficient funds to cover the checks. Over the course of thirteen months, First Community Bank collected more than $4,000 in overdraft fees from Landmark. Landmark failed to remit $14,951.27 in insurance premiums owed for several real estate

transactions that it closed. When the complaint was filed, the First Community Bank escrow account had a negative balance and was severely underfunded. Old Republic alleges that the shortfall in Landmark's escrow account at First Community Bank exceeds $429,000.

## III.

In its amended complaint, Old Republic makes claims against First Community Bank for negligence and conversion. In its negligence claim, Old Republic alleges that First Community Bank knew that the escrow account was a fiduciary account in which Landmark was holding funds for others, and that the bank knew or should have known that Landmark was misappropriating the funds based on repeated overdrafts. Old Republic alleges that First Community Bank was negligent by failing to investigate Landmark's actions; failing to close the escrow account after learning of the repeated overdrafts; following Landmark's and Ingram's directions as to which items to honor and which to reject; and continuing to collect overdraft fees from Landmark for a period of thirteen months. Old Republic also alleges that First Community Bank is liable for conversion because it had notice of, participated in, and benefitted from Landmark's and Ingram's conversion of funds belonging to Old Republic. First Community Bank has moved for summary judgment on these claims.

**A.    NEGLIGENCE**

First Community Bank argues that it cannot be liable for negligence because it had no duty to exercise reasonable care to protect Old Republic, a noncustomer, from harm. First Community Bank further argues that even if it owed a duty to Old Republic, any harm that resulted was not foreseeable because it had the right to assume that Landmark and Ingram would obey the law.

"The question of what duty is owed is always a question of law and never one for the jury." *Keck v. Am. Employment Agency, Inc.*, 279 Ark. 294, 298, 652 S.W.2d 2, 4 (1983). If no duty is owed, then a claim for negligence fails as a matter of law. *Mans v. Peoples Bank of Imboden*, 340 Ark. 518, 524, 10 S.W.3d 885, 888 (2000). The general rule in Arkansas and elsewhere is that banks do not owe noncustomers a duty to exercise reasonable care. *See Shane Smith Enters., Inc. v. Bank of Am., N.A.*, No. 4:06CV00376, 2007 WL 1880201, at *2-3 (E.D. Ark. June 29, 2007) (citing to a number of cases that support that holding). First Community Bank did not owe Old Republic, a noncustomer, a duty to exercise reasonable care. Therefore, Old Republic's claim of negligence fails as a matter of law.

Old Republic cites to a Second Circuit case, *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006), for the proposition that First Community Bank must conduct itself as would a reasonably prudent person. The *Lerner* court noted that

> a bank may be liable for participation in [the misappropriation of funds], either by itself acquiring a benefit, or by notice or knowledge that a diversion is intended or being executed. Adequate notice may come from circumstances which reasonably support the sole inference that a misappropriation is intended, as well as directly. Having such knowledge, the bank is under the duty to make reasonable inquiry and endeavor to prevent a diversion.

459 F.3d at 287 (internal citations, quotations, and brackets omitted). The *Lerner* court then cites to and quotes from *Norwest Mortgage, Inc. v. Dime Sav. Bank of New York*, 280 A.D.2d 653, 654, 721 N.Y.S.2d 94, 95 (2001), finding that:

> Facts sufficient to cause a reasonably prudent person to suspect that trust funds are being misappropriated will trigger [such] a duty of inquiry on the part of a depositary bank, and the bank's failure to conduct a reasonable inquiry when the obligation arises will result in the bank being charged with such knowledge as inquiry would have disclosed.

*Id.* at 288 (internal citations omitted). Ultimately, the *Lerner* court determined that although small overdrafts were insufficient to trigger a duty of inquiry, that duty may be triggered by a chronic insufficiency of funds. *Id.*

To the extent that Old Republic relies on *Lerner* for the proposition that First Community Bank owes it a duty of care, that reliance is misplaced. In the section of the *Lerner* opinion immediately preceding the language quoted *supra*, the Second Circuit reiterated the general rule that banks do not owe a duty of care to protect noncustomers from the intentional torts of their customers. *Lerner*, 459 F.3d at 286. Although the *Lerner* court went on to say that a bank may be liable to noncustomers under certain circumstances, those circumstances run parallel with the circumstances under which banks may be liable for participating in conversion under Arkansas law, which the Court will explain below. Old Republic suggests that this Court could adopt the "reasonably prudent person" standard mentioned in *Lerner*, but as explained above, under Arkansas law, a bank does not owe noncustomers a duty to exercise reasonable care.

**B.    CONVERSION**

In addition to its negligence claim, Old Republic asserts a common law conversion claim against First Community Bank. That First Community Bank did not owe Old Republic a duty to exercise reasonable care does not necessarily exonerate the bank from liability for participating in Landmark's and Ingram's misappropriation of funds under the legal theory of conversion. First Community Bank argues that it had no intent to convert funds, did not exercise control over Old Republic's property, and did not benefit from or participate in Landmark's or Ingram's conversion of funds. In response, Old Republic argues that First Community Bank did participate in the conversion and may be held liable under Arkansas law.

"To establish liability for the tort of conversion, a plaintiff must prove that the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owner's rights." *Hatchell v. Wren*, 363 Ark. 107, 116-17, 211 S.W.3d 516, 521 (2005). In *Helena v. First National Bank of Helena*, 173 Ark. 197, 292 S.W. 140 (1927), the Supreme Court explained how a bank may liable for participating in conversion of funds:

> The general principle governing the bank's liability is that the officers of the bank, who know that a fund on deposit is a trust fund, . . . *where charged with notice of the conversion of the trustee*, [cannot] participate with him in appropriating it to his own use, without being liable to refund the money, if the appropriation is a breach of the trust.
>
> * * *
>
> The obligation of the bank is simply to keep the fund safely and to return it to the proper person, or to pay it to his order. If it be deposited by one as trustee, the depositor, as trustee, has the right to withdraw it, and the bank, *in the absence of knowledge or notice to the contrary*, would be bound to assume that the trustee would appropriate the money, when drawn, to a proper use. Any other rule would throw upon a bank the duty of inquiring as to the appropriation made of every fund deposited by a trustee or other like fiduciary; and the imposition of such a duty would practically put an end to the banking business, because no bank could possibly conduct business if, without fault on its part, it were held accountable for the misconduct or malversation of its depositors who occupy some fiduciary relation to the fund placed by them with the bank. *In the absence of notice or knowledge*, a bank cannot question the right of its customer to withdraw funds, nor refuse . . . to honor his demands by check; and therefore, even though the deposit be to the customer's credit in trust, the bank is under no obligation to look after the appropriation of the trust funds when withdrawn . . . . *But if the bank has notice or knowledge that a breach of trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the fund, then it will be undoubtedly liable.*

*Helena*, 173 Ark. at 199-201, 292 S.W. at 141 (emphases added) (internal citations and quotations omitted). *See also Carmichael v. Sec. Sav. & Loan Ass'n of Conway*, 264 Ark. 657, 663, 574 S.W.2d 651, 654 (1978) (quoting *Helena* for the general rule); *Hartford Accident & Indem. Co. v. Bradley*, 211 Ark. 1069, 1077-78, 204 S.W.2d 792, 797 (1947) (holding that a bank that honors a

check while knowing or charged with knowledge that the depositor has violated a trust in drawing the check thereby participates in that violation of trust); *Drainage Dist. No. 7 of Poinsett County v. Citizens Bank of Jonesboro*, 205 Ark. 435, 438-39, 170 S.W.2d 60, 62 (1943) (where a trustee deposits trust funds in a bank, and the bank permits him to withdraw the funds with notice that he is committing a breach of trust, the bank is liable for participation in that breach of trust). Old Republic contends that, based on these cases, First Community Bank can be held liable for Landmark's or Ingram's misappropriation if it is determined that First Community Bank had knowledge or notice of the misappropriations and allowed them to continue.[1]

Philip Hays, a First Community Bank employee, is a branch manager in Searcy. He is the employee of First Community Bank who had the most contact with and oversight of the Landmark escrow account. He was responsible for overseeing and reviewing the account. In his deposition testimony, Hays admitted that he knew that Landmark's escrow account was a fiduciary or trust account. Hays testified that he would review checks presented for payment on the account and, when there were insufficient funds, determine whether to overdraft the item or return the check for insufficient funds. From March 2008 through June 2009, Ingram presented 196 checks for which there were insufficient funds, and First Community Bank collected $4,900 in fees for overdrafts or insufficient funds.

---

[1] As mentioned in the Court's discussion on the negligence claim, Old Republic suggests that the Second Circuit's holding in *Lerner* requires banks to act as would a "reasonably prudent person" when they suspect that funds are being misappropriated. That is not the standard in Arkansas, and this Court refuses to adopt it here. According to *Helena* and its progeny, under Arkansas law, a bank may be liable for participating in the conversion of funds only when it can be charged with notice or knowledge of the misappropriation of funds. The Court declines to extend the "reasonably prudent person" standard to charge banks with knowledge that a reasonable inquiry would have disclosed.

7

Hays admitted that he knew that Ingram was improperly managing the escrow account:

Q. Well, you told me when we first started talking about – we were talking about the escrow accounts in general, and you – you demonstrated to me that you sort of understand how – how that works for – for a business like Ms. Ingram and – and you understood that – that the – that the source of money in her escrow account was money related to loans she was going to close, yes?

A. Correct.

Q. Okay. So isn't it true that there should never really be a shortage in that account if she's doing what she's supposed to do; is that a fair statement?

A. That'd be fair to say.

Q. Yeah. You saw – you saw shortages in that account – we've seen lots of them, yes?

A. Yes, sir.

Q. So did that not cause you to wonder what was going on over at Landmark?

A. Well, I just thought that Ms. Ingram was a sloppy bookkeeper. Again, when I would talk to her about that, she would have a reason to what was going on and would – would get the money over to us.

Q. Okay. I apologize, we may have been through this. If on one of any given morning that you had – she had some outstanding items that weren't – you know, that couldn't be covered and you made a call to her and she – and she brought a deposit to you then, but it was not enough to cover all those items, did that happen sometimes?

A. Yes, sir.

Q. Okay, then at that point, how would you – how would it be determined which items, you know, you paid from that new deposit and which ones got returned?

\* \* \*

A. There would – might have been a couple of instances where, like I said, she had already talked to the company in advance and said, they're going to resend this through, it's okay that that one's the one that goes back, and it would be the one that was probably usually the most or – but, yeah.

8

> Q. So that would just be one you'd return then?
>
> A. That's correct.
>
> * * *
>
> Q. And there were – but there was more than one instance where there would be several to present on the same day that – that you had to – weren't – there was not sufficient funds to pay?
>
> A. That's correct . . . .

According to Hays, Ingram on occasion would direct him as to which checks he should clear and which he should dishonor. Ingram regularly incurred charges for insufficient funds or overdrafts, and the bank regularly collected those charges. Thus, there is an issue of fact as to whether the bank, through Hays, was on notice and had knowledge of Ingram's misappropriations, participated in her misappropriating the funds, and benefitted financially from it.

## CONCLUSION

For the reasons stated above, First Community Bank's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The motion for summary judgment is granted as to Old Republic's negligence claim but denied as to its conversion claim. Document #62.

IT IS SO ORDERED this 1st day of June, 2010.

*/s/ J. Leon Holmes*
_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE